**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Anthony Delgado, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:20-cv-03271 |
| v. | ) | |
| | ) | |
| Chicago Water and Fire Restoration, | ) | Hon. Harry D. Leinenweber |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## Factual Background

Plaintiff, Anthony Delgado, was hired as a mitigation apprentice (Helper) by Defendant in July 2017. Defendant's Statement of Facts (DSF) ¶ 19. Defendant usually promotes a Helper to a Crew Chief within five or six months of his hiring, or within a year at the latest. Plaintiff's Statement of Additional Facts (PSAF) ¶¶ 13, 16-17. Plaintiff was employed as a Helper for more than 23 months when he filed his discrimination charge with the EEOC, the longest serving helper in Defendant's employ. *Id.*, ¶ 15. Plaintiff suffers from epilepsy, and he is not able to drive because of his epilepsy. DSF ¶¶ 45-46. Defendant knew of this condition since he had a seizure at a company meeting in March 2018. *Id.*, ¶¶ 45, 47.

Defendant does not have any written procedure or standard for promoting a Helper to a Crew Chief. *Id.*, ¶ 1. Nor does Defendant conduct performance reviews on Helpers regarding their work. *Id.*, ¶ 2. Promotion to Crew Chief is offered based on the Company's need and rather spontaneously. *Id.*, ¶ 13. According to Crew Chiefs, Plaintiff did a good job and he also had good customer reviews. *Id.*, ¶ 20. Mr. Delgado approached John Montalbano, a manager of Defendant in mid-2018, asking about a raise and promotion to a Crew Chief. *Id.*, ¶ 3. From then on until February 2019, Plaintiff had multiple meetings and text messages with Montalbano regarding a raise and promotion. *Id.*, ¶ 4. During these conversations, Montalbano told Plaintiff that he was not promoted because he was working too much overtime and that he was not able to get his driver's license. *Id.*, ¶ 5. During the EEOC procedure, Defendant admitted that one of the reasons why Plaintiff was not promoted was because he could not drive. *Id.*, ¶¶ 6-8. Plaintiff questioned Montalbano because there were at least two non-disabled Crew Chiefs without driver's licenses and Defendant assign drivers for them. *Id.*, ¶ 9. Montalbano explained that they had drivers because there were already Crew Chiefs when their driver's licenses were revoked. *Id.*, ¶ 10. However, in February 2019, Defendant promoted at least two non-disabled Helpers, Julio Lopez and Corey Madison, who did not have a

driver's license to Crew Chief. *Id.*, ¶ 10. They were hired around the same time Plaintiff was hired. *Id.*. when Plaintiff asked Montalbano why he was treated differently from Lopez and Madison and stated that he believes his epilepsy diagnosis was the reason why he was treated differently. *Id.*, ¶ 11. Montalbano did not respond to Plaintiff's question and only stated that "[M]y one thing is not about money. It is about the company." *Id.*, ¶ 12.

Attending meetings did not affect eligibility for promotion to the Crew Chief position. *Id.*, ¶ 18. Rather, Defendant considered presentability and appearance very important when promoting Helpers. *Id.*. While Defendant emphasizes the importance of Helper's attending company meetings, it selectively disciplined Helpers who missed or were late for the meetings. *Id.*, ¶¶ 22-26. Helpers who missed or were late for the meeting but were not disciplined for by Defendant were later promoted to Crew Chief. *Id.*, ¶¶ 23, 26. Plaintiff started to get write ups for being late for or missing meetings just after he started to ask about a raise and promotion. *Id.*, ¶ 28. After Plaintiff filed an EEOC discrimination charge, he received three write ups within a month. *Id.*, ¶ 32. During this litigation, Defendant listed 30 alleged incidents of misconduct by Plaintiff as reasons why Plaintiff was not promoted. *Id.*, ¶ 31. Most of these alleged incidents of misconduct are not supported by written evidence. *Id.*, ¶ 32. Nor did Defendant ever explain Plaintiff that he was not promoted because of company policy violations during his employemnt. *Id.*, ¶¶ 33-34. In this litigation Defendant stopped claiming that Plaintiff was not promoted because of his inability to drive. *Id.* ¶ 32. Defendant also gave at least one Helper a raise from $15 per hour to $16 per hour contrary to its claim that Helpers are not eligible for a raise. *Id.* ¶ 40.

Plaintiff brings this action under the Americans with Disabilities Act (Counts I and II) and the Illinois Human Rights Act for Defendant's Refusal to Promote (Counts III and IV) alleging that Defendant refused to promote him and give a raise based on his disability.

**Legal Standard**

The standard for summary judgment is well established: with the court drawing all inferences in the light most favorable to the non-moving party, the moving party must discharge its burden of showing that there are no genuine issues of material fact, and that the movant is entitled to judgment as a matter of law. *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All doubts are to be construed against the moving party. *Trotter v. Anderson*, 417 F.2d 1191, 1192 (7th Cir. 1969). Motivation is itself a factual question. *Hunt v. Cromartie*, 526 U.S. 541 (1999).

## Argument

Under the Seventh Circuit's summary judgment analysis, the singular question that matters in a discrimination case is: '[W]hether the evidence would permit a reasonable factfinder to conclude that the plaintiff's proscribed factor caused the discharge or other adverse employment action.'" *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). The record of this case contains direct and circumstantial evidence, along with the evidence of pretext, which would allow a jury to conclude that Mr. Delgado was not promoted and paid less based on his disability.

### A. Failure to Promote

### I. Plaintiff can establish a prima facie case of disability discrimination.

To defeat summary judgment on a disability discrimination claim, a plaintiff should establish that (1) he is a person with a disability within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job with or without a reasonable accommodation; and (3) he suffered from an adverse employment decision as a result of his disability. *Guzman v. Brown County*, 884 F.3d 633, 641 (7th Cir. 2018). Defendant argues that Plaintiff cannot establish the second prong because he

was not meeting the legitimate expectations of the employer. Defendant also argues that Plaintiff cannot meet the "but-for" causation standard. These arguments are meritless.

### 1. Plaintiff is a qualified individual under the ADA.

Defendant, without any factual or legal support, claims that Plaintiff did not satisfied the prerequisites for the Crew Chief position such as "possessing the appropriate educational background, employment experience, skills, licenses, etc." just because he allegedly did not meet the management's subjective and generalized expectations.

First, Defendant provides no evidence supporting the assertion that Plaintiff did not have any educational background, employment experience, skills, or licenses to be a crew chief. On the contrary, the evidence shows that Plaintiff was the Helper with the longest employment history at the time he filed his EEOC charge; that he was already performing most of the duties of Crew Chief; that there is not much difference between the duties of a Helper and Crew Chief; that Plaintiff had good reviews from customers; and that Plaintiff was performing so well as a helper that Mr. Michael Love, a former Crew Chief, specifically asked Defendant to assign Plaintiff as his Helper. PSAF ¶¶ 15, 20-21. Mr. Joseph Oweina, a former Crew Chief, also testified that attending meetings did not affect Helper's chance of being promoted. *Id.*, ¶ 18. Defendant cannot prove as a matter of law Plaintiff did not satisfy the prerequisite to be a Crew Chief because there is no written standard or policy for promoting a Helper to a Crew Chief. *Id.*, ¶ 1. Nor does Defendant conduct performance reviews on Helpers. *Id.*, ¶ 2. Since there are no objective criteria for promotion or work performance, there is a jury question as to whether Plaintiff was qualified individual or not. *Lawson v. CSX Transp., Inc.*, 245 F.3d 916 (7th Cir. 2001)(denying summary judgment motion when there is no guideline defining qualification even though the defendant argued that the plaintiff was not qualified individual due to his lack of employment history).

Moreover, a performance or disciplinary issue cannot be used to argue that a plaintiff is not qualified individual under the ADA. *Dodson v. Staples, Inc.*, 2006 U.S. Dist. LEXIS 92627, at *17-19 (S.D. Ind. Dec. 20, 2006)(ruling that the court cannot properly consider disciplinary issues in determining whether the second *prima facie* prong has been met and the disciplinary issues are better framed as a proffer of legitimate, non-discriminatory reasoning for the termination of plaintiff's employment); *see also Goodwin v. Board of Trustees of University of Illinois,* 442 F.3d 611, 619 (7th Cir. 2006) (holding that a defendant cannot use a disciplinary record to defeat the second prong (meeting employer's legitimate expectation) of the *McDonnell Douglas* test because the argument assumes its conclusion and the entire purpose of the *McDonnell Douglas* test is to determine whether the action in question was a legitimate reason for the adverse employment action). As discussed in detail in the next section, the record contains ample evidence showing that Defendant's explanation for not promoting Plaintiff is a pretext. Where, as here, an employee claims that he "performed satisfactorily and the employer is lying about the business expectations required for the position, the second prong and the pretext question seemingly merge because the issue is the same--whether the employer is lying." *Peirick v. Indiana University-Purdue University Indianapolis Ath. Department*, 510 F.3d 681, 687-88 (7th Cir. 2007); *Coco v. Elmwood Care, Inc.,* 128 F.3d 1177, 1179 (7th Cir. 1997).

Most of Plaintiff's disciplinary records are neither relevant nor credible, which is one more reason why Defendant cannot rely on the disciplinary records to show Plaintiff was not a qualified individual. It is well established that whether a person is a qualified individual is examined as of the time of the adverse employment decision. *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013). Defendant already decided not to promote Plaintiff as early as mid 2018 and February 2019, at the latest, when it promoted a similarly situated employees. PSFA ¶¶3-5. Plaintiff filed his EEOC charge in May 2019. *Id.*, ¶ 30. Thus, any disciplinary actions after May 2019 are irrelevant. Most of Plaintiff's supposed rule violations were not included his personnel file produced under the

Illinois Personnel Record Review Act. 820 ILCS 40/0.01, *et seq. Id.* ¶ 32. The jury can infer from this sloppy record keeping that the disciplinary actions were neither thoroughly tracked during Plaintiff's employment nor important to any decision not to promote Plaintiff. It should be also noted that the Act prevents Defendant from introducing **personnel record information which was not included in the personnel record but should have been as required by this Act in a judicial proceeding.** 820 ILCS 40/4.

The evidence also indicates that Plaintiff was able to handle the physical demand of the Crew Chief position because the duties of two positions were not very different. *Id.* ¶ 21. While Plaintiff was not able to drive, this would have been accommodated easily because Defendant had previously promoted non-disabled Helpers without a driver's license to Crew Chief and then assigned a driver for them. *Id.* ¶¶9-11.

Since Plaintiff offered sufficient evidence that he was performing satisfactorily and that disciplinary records and explanation provided by Defendant are pretextual, it cannot be concluded as a matter of law, that Plaintiff was not a qualified individual under the ADA. This warrants denial of the summary judgment motion.

## 2. Plaintiff can show his disability is a but for cause of Defendant's decision not to promote him.

Defendant relies on *Serwatka v. Rockwell Automation, Inc.*, 591 F. 3d 957 (7th Cir. 2010) to argue that Plaintiff should establish that his disability was a "but-for" cause for the adverse employment action. However, *Serwatka* was decided under the previous version of the ADA which set forth that "[n]o covered entity shall discriminate against a qualified individual with a disability *because of* the disability of such individual," *Id.*, at 962**;** 42 U.S.C. § 12112(a) (2008). In 2008, Congress enacted significant amendments to the ADA and the language prohibiting discrimination "*because of*" a disability was amended to prohibit discrimination "*on the basis of*" a disability. 42 U.S.C. § 12112(a)

(emphasis added). While the Seventh Circuit has not yet addressed whether the 2008 amendments to the ADA affects the standard required to prove causation, it recognized the significance of the amendment. *Silk v. Board of Trustees*, 795 F.3d 698, 705 (7th Cir. 2015); *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 n.2 (7th Cir. 2015). Since the plain language of the statute does not support a "but-for" cause, it is questionable whether the "but-for" standard is still applicable to disparate treatment disability discrimination claims. Even the Seventh Circuit Pattern Jury Instruction allows a mixed motive instruction in a disability case. Federal Jury Instructions of the Seventh Circuit (rev. 2017), 4.02, Comment d.

Even assuming the but for causation standard is applicable, Plaintiff can still establish a prima facie case because he only needs to show that his disability was *a* but-for cause of his not being promoted; the disability need not be the *only* but-for cause of the adverse employment action. *Myvett v. Kraft Heinz Foods Co.*, 2020 U.S. Dist. LEXIS 46436, at *11-12 (N.D. Ill. Mar. 16, 2020). In *Myvett*, a plaintiff's disability claim survived summary judgement when the record contained evidence enabling a reasonable jury to conclude that the plaintiff was fired on the basis of her disability even though Defendant claimed that her performance deficiencies were the but-for cause of her firing. *Id.* Therefore, defendant's alleged legitimate explanation for an adverse employment action -such as performance deficiencies- does not preclude plaintiff from establishing that his disability was a but-for cause of discrimination, because a single event can have multiple but-for causes. *Id.* citing *Nigh v. School Dist. of Mellen*, 50 F. Supp. 3d 1034, 1056 (W.D. Wis. 2014) (ruling that a reasonably jury might find that the employer would have renewed employee's contract but for her FMLA leave even if her performance deficiencies played just as great a role in the employer's decision not to renew the contract.)

Here, as discussed in Sections II and III below, there is sufficient evidence showing that Plaintiff might not even have been disciplined at all but-for his disability, and would have been promoted

but-for his epilepsy, even if his disciplinary records may have played a role. Accordingly, summary judgment is not appropriate.

## II.   A reasonable jury can find Defendant's decision not to promote Plaintiff was based on his disability.

The record contains sufficient direct and circumstantial evidence showing that Plaintiff was not promoted based on his disability. When Plaintiff approached the management to ask about the reason why he was not promoted, Montalbano explicitly told him that it was because he did not have a driver's license. PSAF ¶ 5. Since Plaintiff's inability to obtain a license is because of his epilepsy, this admission is the same as stating that he was not promoted because of his disability. Further, when Plaintiff asked why two other employees who did not have a driver's license were working as Crew Chiefs, Montalbano explained that it was because they were already Crew Chiefs when their driver's licenses were revoked. *Id.,* ¶ 9.  However, contrary to Montalbano's representation to Plaintiff, Defendant promoted at least two more non-disabled Helpers who did not have driver's licenses to Crew Chief in February 2019 even though they were hired around the same time or later than Plaintiff was hired. *Id.,* ¶ 10. This shows a systemic favorable treatment of non-disabled employees when it comes to promotion. *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994) (the systematically better treatment of employees similarly situated to the plaintiff is circumstantial evidence of discrimination.)  After the similarly situated Helpers without a driver's licenses were promoted, Plaintiff texted Montalbano. *Id.,* ¶ 11. In his text message, Plaintiff expressed that his epilepsy diagnosis was the reason for not promoting him and begged for explanation. *Id.* Montalbano did not say his disability was unrelated with Defendant's decision. Nor did Montalbano inform Plaintiff that his alleged violations of company policy were the reason. Instead, Montalbano gave Plaintiff an ambiguous answer stating "[M]y one thing is not about the money it's about the company." *Id.,* ¶ 12. *Troupe, supra.* (ambiguous statements oral or written is circumstantial evidence that may show intentional discrimination).

Defendant's conduct after learning about Plaintiff's disability is highly suspicious, from which discriminatory intent can be inferred. Defendant first became aware of Plaintiff's disability in March 2018 when he had a seizure at a company meeting. *Id.,* ¶ 28. In the subsequent meeting after Plaintiff's seizure, the management, John Montalbano and Blake Veldman, raised extreme concerns about the possibility of Plaintiff's having seizure at a customer's house and out on the job. *Id.,* ¶ 27. Plaintiff started to get write ups for being late for a meeting around the time he first approached Montalbano to inquire as to why he was not being promoted to Crew Chief. *Id.,* ¶¶ 28-29. Plaintiff did not have any write up for about a year since his employment until Defendant learned of his disability and he started to question the company's decision not to promote him. *Id.,* ¶ 32. Defendant ramped up its efforts to discipline Plaintiff even more after he filed his discrimination charge in May 2019. *Id.* Since Defendant considers employee's appearance and presentability as one of the most important factors for promotion, a reasonable jury can infer that Defendant did not want Plaintiff who may have a seizure at any moment to be Crew Chief because Crew Chief is the employee who directly communicates with clients and represents the Company to clients.

Defendant's highly subjective promotion decisions indicates discrimination as well. *Kielczynski v. LaGrange*, 122 F. Supp. 2d 932, 947 (N.D. Ill. 2000) (Subjective practices are particularly susceptible to discriminatory abuse and should be closely scrutinized. The lack of safeguards and checks and balances to prevent discrimination when using a subjective testing criterion can be indicative of discrimination). Defendant does not have any written standard for promotion, nor does it conduct performance reviews on Helpers' work. PSAF ¶¶ 1-2. While Plaintiff performed good work as a Helper, received good reviews from customers, and volunteered to work many hours, he was denied promotion because he allegedly did not meet Defendant's "expectations," which were never explained to Plaintiff in his series of conversations on a promotion and raise with Montalbano. *Id.,* ¶ 34. Both Mr. Love and Mr. Oweina testified that they were spontaneously promoted to Crew Chief

one day when they reported to work without any formal vetting procedure. *Id.*, ¶ 13. When the evaluation of employees is highly subjective, there is a risk that supervisors will make judgments based on stereotypes of which they may or may not be entirely aware. *Kimble v. Wis. Dep't of Workforce Dev.*, 690 F. Supp. 2d 765, 775-776 (E.D. Wis. 2010) quoting *United States v. Stephens*, 421 F. 3d 503, 515 (7th Cir. 2005).

### III. There is overwhelming evidence of pretext.

An inference of discrimination may follow when the employer's purported nondiscriminatory reason for taking an adverse action against the employee was pretextual. *Smith v. Chi. Transit Auth.*, 806 F. 3d 900, 905 (7th Cir. 2015). Plaintiff is not required to establish that Defendant's explanation for the adverse employment actions is a lie. Pretext is a defendant's explanation for an employment practice being "unworthy of credence." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). Pretext is not merely a step in a *McDonnel Douglas* analysis; pretext is itself circumstantial evidence of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133 at 147 (2000). Evidence of suspicious timing and pretext are sufficient to present a genuine issue of fact as to the [defendant's] motives. *Coleman v. Donahoe*, 667 F. 3d 835, 860 (7th Cir. 2012).

### 1. Plaintiff was selectively disciplined.

Selective enforcement of company policy can establish pretext. *Id*, 667 F.3d at 858. Defendant does not consistently discipline employees for missing the company meetings. PSAF ¶¶ 22-26. Mr. Michael Love testified that Defendant had a practice of selectively disciplining employees and set them up for failure. *Id.*, ¶ 22. Mr. Love testified that he missed the company meetings as a Helper but was not disciplined. *Id.*, ¶ 26. He was later promoted to a Crew Chief. *Id.*. Defendant's own records indicate that not all Helpers who missed meeting were given write ups. *Id.*, ¶¶23-25. Notably, Plaintiff received a write up for missing a meeting on May 15, 2019, while Julio Lopez, another

Helper, who missed the same meeting on the same day was not disciplined. Plaintiff asked his

supervisor Trevor Madera about why he was singled out for a write up. *Id.* Further, Lopez who

missed a meeting and Jason Dlugi who were late for the meeting on May 22, 2019, were not

disciplined. Dlugi was promoted to Crew Chief on August 21, 2019 and Defendant stated that he

was promoted because of "[N]o missed meetings or disciplinary record as a helper" in its

interrogatory response. *Id.* This clearly shows Plaintiff was selectively disciplined and that Defendant

can arbitrarily choose not to discipline Helpers and promote them ,even when they previously

violated company policy.

Plaintiff did not have any disciplinary records before Defendant knew about his disability and he

approached Montalbano asking for a promotion and raise. *Id.*, ¶¶ 28, 32. However, right after

Plaintiff questioned the management's decision to not promote him around his one-year anniversary

of employment, he started to get hit with write ups. *Id.*, ¶¶ 28-29. After filing an EEOC charge,

Plaintiff received three write ups within a month. Plaintiff was written up even when he did not

violate any company policy. *Id.*, ¶ 32. For example, it was the Operation Manager's responsibility,

not  the Helper's responsibility, to find a replacement for a Helper when he is not available to work

on a certain day, and there is no pre-authorized list of replacement helpers. *Id.*, ¶ 35. However,

Plaintiff was disciplined for sending in another Helper who previously worked for Defendant.

Further, Plaintiff was accused of not utilizing the alleged authorized on-call helper list, but

Defendant admitted that Plaintiff was not in possession of such a list when he was disciplined. *Id.*, ¶

36.

Since Defendant did not consistently discipline employees for rule violations and Plaintiff

was selectively disciplined after Defendant became aware of his disability, and after Plaintiff

questioned Defendant's decision not to promote him, it can be inferred that their explanation on not

promoting Plaintiff is a mere cover up for discrimination.

**2. Shifting reasons, delay or lack of consistent disciplinary records, and exaggeration show Defendant's reasons are ad hoc pretext.**

The most significant evidence of pretext is the ever-shifting explanations of Defendant's refusal to promote Plaintiff. During his employment, Defendant explained that Plaintiff could not get a raise or be promoted because he was working too much overtime and he did not have a driver's license. PSAF, ¶ 5. Even though Plaintiff approached Defendant regarding his promotion and raise from mid 2018 to early 2019 on numerous occasions, he was never told that he was excluded from promotion because he violated company policies. *Id.*, ¶ 34. If Plaintiff's violation of the company policies or lack of professionalism were the true reason, saying so would have been the most convincing and straightforward answer. An employer's failure to express the alleged legitimate explanation earlier despite several opportunities to do so is compelling evidence of pretext. *Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 634 (7th Cir. 1996).

After Plaintiff filed the EEOC charge, Defendant in his position statement, for the first time, brought up that Plaintiff was not being promoted because he missed the company meetings and he failed to clock in and out. Defendant also continued to state that Plaintiff's inability to obtain a driver's license was one of the reasons why he was not being promoted. PSAF, ¶¶ 6-9. During this current litigation, Defendant completely drops the license issue as a basis of not promoting Plaintiff. *Id.*, ¶ 31. Instead, Defendant listed up to 30 incidents of alleged company violations as the reasons why Plaintiff was not promoted even though most of these rule violations are not supported by any written disciplinary action or even verbal warnings. *Id.*, ¶¶ 31-34. Defendant dug up all the occasions where Plaintiff allegedly failed to clock in and out dating back to early 2018. While Plaintiff frequently reported his work hours by text to his supervisors, at no time during these conversations, was he told this was improper or a violation of the company policy. Nor was he ever written up for those incidents. *Id.* Given that Defendant actually issues write ups for employees who fail to clock in and

out, and that it failed to address Plaintiff's alleged violations at the time they occurred, a jury can infer that the issue was not severe enough and these are ad hoc reasons Defendant came up with during the litigation. *See Peirick v. Indiana University-Purdue University Indianapolis Ath. Department*, 510 F.3d 681, 692 (7th Cir. 2007)(defendant's delay in addressing its alleged concerns undermines its claim that employee's behavior was unsafe or severe.); *Perfetti v. First Nat. Bank of Chicago,* 950 F.2d 449, 456 (7th Cir. 1991) ("If at the time of the adverse employment decision the decision-maker gave one reason, but at the time of the trial gave a different reason which was unsupported by the documentary evidence the jury could reasonably conclude that the new reason was a pretextual after-the-fact justification").

Based on the evidence, Defendant's emphasis on the company meeting appears to be exaggerated. First, Defendant selectively disciplined Helpers who missed the meetings and Helpers who missed the meetings and were not disciplined were promoted to Crew Chief. PSAF ¶¶ 22-26. Further, unlike Defendant's claim, administrative issues were the main subject of the meetings, not safety training. *Id.*, ¶ 17.  Defendant also exaggerates the extent of Plaintiff's alleged inappropriate language use and refusal to follow directions. When asked to provide specific explanation for such behaviors, Defendant asserted that Plaintiff texting his supervisor "I think I broke my ass bone" after slipping on the ice at the company premises. *Id.*, ¶ 38. Plaintiff was also accused of not following directions because he did not go to the clinic Defendant used instead of his own doctor to get fitness for duty clearance. *Id.*, ¶ 39.This is a desperate attempt to exaggerated Plaintiff's conduct and put Plaintiff in negative light. In sum, Defendant's post hoc explanations, delay, and exaggeration are more than enough to create a question of fact concerning the legitimacy of its explanations for Plaintiff's termination."*Peirick v. Indiana University-Purdue University Indianapolis Ath. Department*, 510 F.3d 681, 687-88 (7th Cir. 2007.

**3. Not promoting a Helper after more than one year of employment is a deviation from Defendant's usual practice.**

Significant, unexplained or systematic deviations from established policies or practices can no doubt be relative and probative circumstantial evidence of discriminatory intent. *Hanners v. Trent*, 674 F.3d 683, 694-95 (7th Cir. 2012). The witness testimonies and Defendant's own records demonstrate that Helpers usually gets promoted within five to eight months and within one year at the latest. There is no written objective standard for promoting Helpers and Defendant promotes them rather spontaneously based on how busy the Company gets. Unfortunately for Plaintiff, he had a seizure at a company meeting when he was at about the 7-month mark. While Plaintiff was told that he was ostensibly not promoted because of his inability to drive, other non-disabled employees who were hired around the time Plaintiff started his employment were promoted before their one-year anniversary according to the usual practice despite that they did not have a driver's license. At the time of Plaintiff's EEOC filing, Plaintiff was employer as a Helper for 23 months, the longest serving Helper employed by Defendant. PSAF ¶ 15. Defendant's EEOC position statement shows that all but one of the Crew Chiefs who were employed at that time were promoted within one year of employment. *Id.*, ¶ 14-16. Out of 22 terminated Crew Chiefs, 18 of them were promoted within one year. *Id.*

Defendant's refusal to promote Plaintiff is a deviation from the usual practice of promoting Helper within a certain timeframe and when considered along with the other evidence indicates that the real reason Plaintiff was not promoted is because of his disability.

**B. Failure to give a raise- The credibility issue precludes summary judgment on Defendant's failure to give a raise.**

The summary judgment standard "is applied with added rigor in employment discrimination cases where intent and credibility are crucial issues." *Wolf v. Buss Inc.*, 77 F.3d 914, 918 (7th Cir. 1995). Summary judgment is improper in a discrimination case where a material issue involves any weighing of conflicting indications of motive and intent. Finally, credibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. *Kielczynski v. LaGrange*, 122 F. Supp. 2d 932, 937 (N.D. Ill. 2000)

Here, Defendant's 30(b)(6) witness testified that other than two Mitigation Helpers who had previous experience, none of Mitigation Helpers got a raise or paid more than $15 per hour. However, Defendant's own records show that there was at least one other Mitigation Helper whose hourly rate was increased to $16 per hour. PSAF ¶ 40. It is noteworthy that Defendant again failed to explain to Plaintiff that Mitigation Helpers are not eligible for a raise when he approached management. Instead, he was told he was working too much overtime and that constituted his raise.

Since Defendant's testimony blatantly contradicts its own record and the reason given to Plaintiff at the time of refusal to give him a raise, this constitutes pretext, and summary judgment should be denied on the issue of Defendant's failure to give a raise.

## Conclusion

Viewing all these facts in the light most favorable to Plaintiff, a reasonable jury could certainly find that Plaintiff's disability was the reason why he was not promoted and not given a raise. Plaintiff only needs to bring forth enough evidence to raise an inference of discrimination to survive summary judgment and he has met the burden. Therefore, Defendant's Motion for Summary Judgment should be DENIED.

Respectfully submitted:
Anthony Delgado

By:      /s/ Heewon O'Connor
One of His Attorneys

Heewon O'Connor
Kevin F. O'Connor
O'Connor | O'Connor, P.C.
110 E. Schiller St., Ste. 212
Phone: 630-903-6397
Fax: 630.658.0336

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2021, Plaintiff's Response to Defendant's Motion For Summary Judgment was served this day on all counsel of record via transmission by electronic mail; all parties to this action being authorized to, and currently utilizing, the CM/ECF system for the Northern District of Illinois.

/s/ Heewon O'Connor.
Heewon O'Connor
O'Connor | O'Connor, P.C.
110 E. Schiller St., Ste 212
Elmhurst, IL 60126
Office 630-903-6397
Fax. 630-658-0336

### Service List

Mark Walter Guest        mwg@doherty-progar.com, mail@doherty-progar.com

Michael Robert Luchsinger        mail@doherty-progar.com, mrl@doherty-progar.com